FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

M. Nawaz Raja and
Neelum Nawaz Raja,

               Plaintiffs,

v.

MERSCORP, Inc., *et al.*

               Defendants

Case No. 1:14-cv-01663-LOG

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE MOTION TO RECONSIDER THE GRANT OF SANCTIONS

Plaintiffs M. Nawaz Raja and Neelum Nawaz Raja, ("Plaintiffs") move this Court, hereby file their Memorandum in support of Motion to reconsider the grant of sanctions to alter or amend judgment and deny such motion based on Safe Harbor violation and other facts stated. In support Plaintiffs state as under;

### MEMORANDUM OF LAW

### I.    *Court fails to give any explanation as to why sanctions are warranted*

The Court fails to give an explanation as to why the sanctions warranted; the Court simply states that Docx, LLC has "unquestionably demonstrated that sanctions are warranted." (Order, pg. 5) The Plaintiffs have no idea as to why the Court granted sanctions when the First Amended Complaint ("FAC") had stated legitimate claims against Docx, LLC, (Docx) and Plaintiffs filed all pleadings in good faith, timely, and following the court procedures. The Plaintiffs have done extensive pre-filing inquiry to support the allegations stated in the FAC and have extensive proof to support their allegations. Further, the Plaintiffs did not file the FAC and its claims against all defendants including Docx, in bad faith, but rather, only to get their claims heard. This court incorrectly stated that Docx, has unquestionably demonstrated that the

sanctions are warranted, (Order at pg.5) without reading Plaintiff's response and analyzing the violations including the *__safe harbor__* committed by the Docx, LLC and its attorneys.(Dkt. 285 pg.1 fn.1). Docx even failed to send *__Roseboro Notice__* to Pro Se Plaintiffs. (Dkt. 285 pg.2 fn.2) Plaintiffs hereby incorporate their all filing in this case including opposition to Docx's alleged motion Dkt. 285 pg.1-30 with all exhibits including Plaintiff's affidavit at Exhibit-9 and Dkt. 287 pg. 1-19 and Dkt.246 pg. 1-30.

Findings of fact and conclusions of law should be included in an order granting or denying sanctions in order to allow appellate review. This Court failed to read the Plaintiff's response to alleged sanction motion, which was *__not__* served to Plaintiffs in violation of *__safe harbor rule__*. The court must find the facts specially and state its conclusions of law separately Findings simply reciting what Docx said were not findings of fact. This court incorporated the allegations from the false motion for sanction as its findings of fact. Thus it cannot do, particularly without making sufficient additional findings of fact which indicate the trial court considered the evidence presented in all filing. . . . Trial court may not incorporate wholesale the allegations in the motion as a substitute for making its own findings of fact

Docx's subject motion, Docx turns the law on its head by putting forth arguments which improperly ask this Court to *assume* that certain facts pled by Plaintiffs under *oath* in FAC are not true, while asking the Court to presume that certain facts *proffered* by Docx are true. Moreover, Docx violated *__safe harbor__* as stated above. A motion for sanctions may *__not__* be filed, however, unless there is *__strict compliance__* with Rule 11's safe harbor provision." *Islamic Shura Council of Southern California v. F.B.I.*, --- F.3d ---, 2014 WL 1013324 (9th Cir. March 18, 2014), *ref. Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.2005) (*__holding that Rule 11's safe harbor provision is strictly enforced__*) and *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th

2

Cir.1997) (*noting that "Rule 11 cases emerging in the wake of the 1993 amendments to Rule 11 have found compliance with the 'safe harbor' provision to be an absolute requirement."*).

Docx's Rule 11 Motion is subject to a ***reverse*** Rule 11 sanctions without the need for Plaintiffs to file Rule 11 motion in response. (See Dkt. 285 pg.2 under argument at (I)). Docx filed its sanctions motion against *Pro Se* Plaintiffs and its counsels *failed* to attach or include at the foot of motion a warning consistent with requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Docx and its counsels have a mandatory duty to advise the Plaintiffs of their right to file responsive material, and to alert them to fact that their failure to so respond might result in entry of an order of dismissal against them. *Davis v. Zahradrich* 600 F.2d 458, 460 (4th Cir. 1979); Roseboro *v. Garrison*, 528 F2d 309, 310 (4th Cir. 1975)

Docx has a mandatory duty to advise the Plaintiffs as required pursuant to this court local Civil Rules 7 (F) (3).  Docx attempts to *avoid* such obligation by not providing "fair notice" in plain English, under well-established common law principle that every judge owes litigants a fair hearing. *See e.g., Lewis v. Faulkner,* 689 F. 2d 100, 102 (7th Cir. 1982); *Graham v. Lewinski,* 848 F. 2d 342 342 (2dCir. 1988); *Roseboro v. Garrison,* 528 F. 2d 309 (4th Cir. 1975); *Klingele v. Elkenberry,* 849 F. 2d 409 (9th Cir. 1988); *Jaxon v. Circle K Corp.,* 773 F. 2d 1138 (10th Cir. 1985); *United States v. One Colt Python* .357 Caliber Revolver, 845 F. 2d 287 (11th Cir. 1988)

The purpose of Rule 11 is to deter baseless filings and streamline the administration and procedure of federal court. *Peer v. lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).  With the Courts ruling on sanctions, Plaintiffs are completely at a loss *to* know what they are supposed to refrain from, and what the reason for the sanctions was.  After the scheduled hearings date, the Court

took more than five (05) months to draft a 6-page order giving **_no_** direction as to why the Plaintiffs have been sanctioned.  In referring to Docx, renewed Motion for Sanctions under rule 11 (Dkt. 281), the Court completely **_ignored_** Plaintiffs' response to the original sanction motion and the renewed sanction motion (See Dkt. 285 pg. 1-30 and Dkt. 287 pg. 1-19).

## II.     DOCX did not follow proper court procedure

Further, as stated above, another purpose of Rule 11 is to streamline the administration and procedure of federal court.  Here, ignoring the **_violations of procedure_** by Docx, and the Court incredibly granted a motion in their favor.  Plaintiffs repeatedly stated that Docx, LLC and its attorneys violated the **_safe harbor_** rule and in addition failed to send the Roseboro Notice to the *pro-se* Plaintiffs.  (See Dkt. 285 pg.1 fn.1 & pg. 2 fn. 2).

A motion for sanctions may **_not_** be filed unless there is **_strict compliance_** with Rule 11's safe harbor provision." *Islamic Shura Council of Southern California v. F.B.I.*, --- F.3d ---, 2014 WL 1013324 (9th Cir. March 18, 2014), *ref. Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.2005) (holding that Rule 11's safe harbor provision is strictly enforced) and *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) (noting that "Rule 11 cases emerging in the wake of the 1993 amendments to Rule 11 have found compliance with the '*safe harbor*' provision to be an **_absolute_** requirement."). Docx did not fulfill this absolute requirement of safe harbor.

Docx's Rule 11 Motion is actually subject to a **_reverse_** Rule 11 sanctions without the need for Plaintiffs to file Rule 11 motion in response. (See Dkt. 285 pg.2 under argument at (I)). Docx  filed its sanctions motion against *Pro Se* Plaintiffs and its counsels **_failed_** to attach or include at the foot of motion a warning consistent with requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Docx and its counsels have a mandatory duty to advise the Plaintiffs of their right to file responsive material, and to alert them to fact that their failure to so

4

respond might result in entry of an order of dismissal against them. *Davis v. Zahradrich* 600 F.2d 458, 460 (4th Cir. 1979); Roseboro *v. Garrison*, 528 F2d 309, 310 (4th Cir. 1975)  Docx has a mandatory duty to advise the Plaintiffs as required pursuant to this court local Civil Rules 7 (F) (3).  Docx attempts to *avoid* such obligation by not providing "fair notice" in plain English, under well-established common law principle that every judge owes litigants a fair hearing. *See e.g., Lewis v. Faulkner,* 689 F. 2d 100, 102 (7th Cir. 1982); *Graham v. Lewinski,* 848 F. 2d 342 342 (2dCir. 1988); *Roseboro v. Garrison,* 528 F. 2d 309 (4th Cir. 1975); *Klingele v. Elkenberry,* 849 F. 2d 409 (9th Cir. 1988); *Jaxon v. Circle K Corp.,* 773 F. 2d 1138 (10th Cir. 1985); *United States v. One Colt Python .357 Caliber Revolver,* 845 F. 2d 287 (11th Cir. 1988)

Along with the reasons stated above, the subject sanctions motion should be denied for the following additional reasons; *1)* Docx's lawyers did *not* satisfy his meet and confer obligations before filing it. *See Local Civ. R. 7(E)* ("Before endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement."); *Karakis v. Gulfstream Park Racing Ass'n, No. 08-61572-CIV, 2008 WL 4938406, at \*1 (S.D. Fla. Nov. 18, 2008)* (holding that pursuant to *See Local Civ. R. 7(E)* a motion should be denied where the movant failed to confer with opposing counsel prior to filing the motion); 2) Docx's lawyers *did not* satisfy their obligation under Rule 11 to serve the motion on Plaintiffs (and thereby allow them to fix any purported problem) before filing it with the Court. *See Fed. R. Civ. P. 11(c)(2); Oceanside Lauderdale, Inc. v. Ocean 4660, LLC, No. 10–60025–CIV, 2011 WL 1327379, at \*3 (S. D. Fla. Mar. 8, 2011)* ("'A litigant must also comply with the procedural requirements of Rule 11 (including the '*safe harbor*' requirement) before obtaining a favorable sanctions order.'"). Failure to observe the *safe harbor procedure* is itself a

*sufficient reason* to deny the motion for sanctions. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008); The Fourth Circuit has held that the —safe harbor[1] provision —imposes *mandatory* obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements *precludes* the imposition of the requested sanctions. *Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (en banc) (emphasis added).

### III.   *Safe-harbor provision affects the district court's authority to impose sanctions requested by Docx,*

Docx's failure to comply with the —safe-harbor provision *affects only the district court's authority to impose sanctions requested* by Docx, and would have no effect *on* the court's authority to *sua sponte* impose sanctions under Rule 11(c) (3). *Id.* at 389 n. 2; 3); Sanctions motion filed by Docx must be made separately— it cannot be *embedded* within another case-dispositive motion such as a motion to dismiss—and it must describe particular conduct alleged to have violated Rule 11. See FED. R. CIV. P. 11(c); *see also Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94-95 (2d Cir. 1999); 5) 28 *U.S.C. § 1927* provides that: Any attorney . . . who so *multiplies* proceedings in *any* case unreasonably and

---

[1] It is also difficult to see how purpose of Rule 11(c) *safe harbor* could have been honored under these circumstances. The safe harbor is intended "to give parties opportunity to correct their errors." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 99. By waiting to file the motion for sanctions until after dismissal of the complaint, the defendants failed to afford plaintiff any opportunity to correct the allegedly sanctionable errors of complaint. "Given the 'safe harbor' provisions . . . , a party cannot *delay* in serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention." Fed R. Civ. P. 11 *Advisory Committee Notes to 1993 Amendments; see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 1337.2, at 727 & n.10 (collecting cases). Further, "a motion for sanctions may not be filed, however, unless there is *strict compliance* with Rule 11's safe harbor provision." *Islamic Shura Council of Southern California v. F.B.I.*, --- F.3d ---, 2014 WL 1013324 (9th Cir. March 18, 2014), *ref. Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir.2005) (holding that Rule 11's safe harbor *provision* is strictly enforced) and *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) (noting that "Rule 11 cases emerging in the wake of the 1993 amendments [to Rule 11] have found [compliance with] the 'safe harbor' provision to be an absolute requirement."). Any motion for sanctions must be served on the offending party *at least 21 days* before the motion is filed with the court. Fed.R.Civ.P. 11(c) (2). Docx did *not* attach a proof of service to show the date that it served its motion on Plaintiffs. This is insufficient to show compliance with Rule 11's safe harbor provisions. Even if it were specific enough to meet requirements, Docx did not submit any statement to that effect which is signed under penalty of perjury to meet his burden as the party requesting imposition of sanctions.

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**IV.    *Court has based the granting of sanctions on mistaken and/or incorrect facts, and erroneous assumptions***

The Court must find the facts specially and state its conclusions of law separately. Apparently, the Court made erroneous assumptions when it simply assumed that the recitation of "facts" as stated in Docx's motion is true and without any further inquiry. The Court simply incorporated the false allegations stated in Docx motion for sanctions in its puzzling order for sanctions. The Court improperly *assumes* that certain facts pled by Plaintiffs under *oath* in FAC are not true, while presuming that the facts *proffered* by Docx are true. The Court should reconsider its sanction order in light of the manifest injustice that it will cause, particularly without making sufficient additional findings of fact to indicate that the Court has considered all the evidence fairly; moreover, the Court's finding of fact and law should be included in an order regarding sanctions in order to allow appellate review.

**V.    *DOCX is subject to a reverse sanction motion of the Plaintiffs***

Docx's sanction motion is frivolous, harassing and should be denied Docx and its counsels [2] liable for sanctions. Docx's counsels filed these motions in ***bad faith***, and their

---

[2] Apparently Docx's counsel Ms. Ernest took opportunity to immediately engage in *ex-parte communications*. Despite Docx and its counsel's false assertions and attempts to disparage Plaintiffs, Plaintiffs *never refused* to "comply with Order." (*See Joint response pg. 2. Dkt. 167*) Ms. Ernest's *overreaching* and *stretching* of the facts are plainly *self-serving*. In fact, Ms. Ernest also *falsely* informed the Court that *all parties* did in fact agree to the May 29th hearing date. (*See also Dkt.162 fn.4 pg.6*, exhibit-5 is very clear) Defendants falsely represent that, "The remaining issues raised in Plaintiffs' Motion are baseless and do not merit discussion." (*See Joint response pg. 3, page ID # 4620 Dkt. 167*). Docx and its counsel Ms. Ernest failed to read Dkt. *162*¶¶ 19-23 of Plaintiff's affidavit. Plaintiff's affidavit, Memo and the exhibits referenced are based on true facts and are clear. Ms. Ernest's statement in joint venture response is false, fraud upon the Court and Plaintiffs. *See U.S. vs. Throckmorton*, 98 US 61, at page 65; *Nudd v. Burrows* (1875) 91 U.S. 416. (Fraud vitiates everything it touches.); *Boyce's Executors v. Grundy* (1830) 28 U.S.210. (Fraud destroys the validity of everything into which it enters).A

7

actions were for *improper* purpose to harass *Pro Se* Plaintiffs. *See Wood v. Brosse U.S.A., Inc.,*

*149 F.R.D. 44, 48 (S.D.N.Y. 1993); See also Schlaifer Nance & Co., Inc. v. Estate of Warhol,*

*194 F.3d 323, 336 (2d Cir. 1999) (quoting Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d*

lawyer found to have engaged in *deceit* or *collusion* faces criminal penalties and/or civil liability in the form of treble damages, or both. ABA Model Rule of Professional Conduct Rule 8.4(c) contains a general prohibition on dishonest conduct, declaring that it is professional *misconduct* for a lawyer to "engage in conduct involving *dishonesty, fraud, deceit* or *misrepresentation*." knowingly making false allegations in a complaint or motion certainly meets the definition of deceptive conduct in that it represents an attempt to mislead a court. *See John A. Humbach, Shifting Paradigms of Lawyer Honesty, 76 TENN. L. REV. 993, 993 (2009)* (stating that truly honest lawyers would never *"assert or controvert"* issues unless there was basis in actual fact for assertion). There are potentially several disciplinary rules that apply to such action. *See E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works,* 258 F.R.D. 76, 88 (S.D.N.Y. 2008) (concluding that attorney who made misrepresentations in filing motion for default judgment had committed fraud upon court). Thus, a lawyer who knowingly includes a false allegation in a complaint or who knowingly makes a false assertion of fact while filing a motion during a proceeding is subject to discipline as well as Rule 11 sanctions. *See generally Fla. Bar v. Thomas, 582 so. 2d 1177, 1178 (Fla. 1991); In re Boone, 7 P.3d 270, 280 (Kan. 2000)* (explaining that same objective standard of good faith applies to both Rule 11 and Model Rule 3.1). Therefore such conduct of Ms. Ernest might also violate a lawyer's duty of candor toward tribunal. See MODEL RULES OF PROF'LCONDUCT R. 3.3 (2002) (describing lawyer's duty of candor to tribunals). The offenses are complete upon the making of the false statement. Plaintiffs have the upmost respect for the Court and have always attempted to comply with all Court orders, deadlines and have followed all local and Federal rules. It is *ironic* that it is actually Docx and its counsels who routinely have disrespected local and federal rules and filed untimely pleadings, filed false documents, filed documents on behalf of Plaintiffs, and stated misleading and false allegations. As stated herein, Docx' conduct is itself sanctionable. (See Dkt. 285 pg. 11-13) Docx's counsel *Ms. Ernest had no legitimate reason to call the judge Liam O'Grady's chambers and get advice from the Judge O'Grady's Law Clerk associated with this case.* It should be noted that Docx's counsels are experienced lawyers who work in large law firms and regularly practice in this court. So, in the *unlikely* event that Ms. Ernest *actually* needed advice, she could ask colleagues in her law firm or counsel for one of her co-defendants (which whom she regularly speaks) for advice; or she could call the Virginia State Bar. She had no legitimate reason to call the judge's chambers and get advice from the Judge O'Grady's Law Clerk associated with this case.[2] The Judge Liam O'Grady's Law Clerk was practicing law while working with the Judge, which he/she is not supposed to. In their continued attempts to disparage Plaintiffs, Defendant Docx et al wrongly suggests that Plaintiffs Objection to Ms. Ernest's MTD and the Motion to Strike Mr. Goldberg's *Pro Hac vice* Application [Dkt.56], filed prior to dismissal of the original Complaint, "is indicative of serial filings perpetrated by Plaintiffs." (See Dkt. 282 pg.8-9). However, Plaintiffs filed legitimate oppositions for the proper purpose of defending their claims **not** to obstruct but rather to get proper administration of this matter. Plaintiffs hereby incorporate by reference their objection to Motion to appear Pro Hac Vice by Fred Owen Goldberg, filed and signed by Ms. Ernest and not by Mr. Goldberg. *(See Dkt.56 ¶¶1-37 fn. 1-7 pg. ID #2419-26).*

*Cir. 1996)).*Therefore Plaintiffs through this opposition request this court to sanction Docx and its Counsel. *See Gordon v. Heimann, 715 F.2d 531 (11th Cir. 1983); 6)* Docx is seeking sanctions for a pleading that is a *verified* complaint by Plaintiffs that has not been alleged to be false by any entity. That, again, alone, is sufficient reason to deny it. See, e.g*., Network Caching Technology, LLC v. Novell, Inc No C-01-2079-VRW, 2003 WL 21699799, at *8 (N.D. Cal. Mar. 21, 2003)*

Moreover, in its MTD, Docx moved to dismiss entire Complaint against all of the Defendants, including against LPS, LPS Default and Docx, on the ground that Docx did ***not*** exist. Such blatant propaganda/falsehood on the part of Docx is completely lacking in evidentiary support and has not been asserted in good faith. Plaintiffs have submitted ***uncontroverted*** evidence in response to Defendant's MTD, as well as the Proof of Docx' ***existence*** from Georgia Secretary of State showing that Docx indeed exists, and regularly renewed its status by the LPS Headquarter from Jacksonville Florida. The blatantly false position advanced by Docx in support of the sanction motion is ***itself***, sanctionable, pursuant to Rule 11.

On August 17, 2015, after dismissing Plaintiff's original complaint, this Court denied all pending motions "as moot" including Docx's previously filed Rule 11 motion. Thereafter, Docx filed a "renewed motion" that is normally based on ***new*** or ***different*** facts, circumstances, or law. However, subject Docx's motion is based on ***old*** facts, that Plaintiffs have ***filed*** opposition to and given explanations for; thus Plaintiffs have described their reasonable basis to ***include*** Docx in their FAC. Regardless, Docx's filed such ***vexatious*** and ***frivolous*** motion twice and such filing under Rule 11 epitomizes the very sort of bad faith filing that Rule 11 was designed ***to*** prevent.

9

Bringing an *unauthorized* "renewed" motion will likely draw a *request* from Plaintiffs for sanctions and possibly even an order that Docx must pay fees for opposing party to respond.

Docx and its counsels also have a duty to investigate all factual allegations; assertions made without adequate inquiry prior to filing of sanctions motion are often sanctionable. See *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994); 2 MOORE'S FEDERAL PRACTICE § 11.11(2) (a) (*Matthew Bender* 3d ed. 1997).*See also Riccard v. Prudential Ins. Co Supra*. Frivolous advocacy by the Docx's counsel inflicts distress, wastes time, and causes increased expense to the tribunal and adversaries and may achieve unjust results.   (See Dkt. 285 pg 2-5). Similar the situation over here in this case involving frivolous sanctions motions or defenses themselves *lead* to court sanctions rather than bar discipline.

## VI.     The Court should reconsider the alleged facts in the FAC that were apparently ignored.

It is public knowledge that Lorraine Brown, CEO of Docx is serving jail time for the crimes committed, including fraud on behalf of Docx, LPS and LPS Default in a joint venture. Plaintiffs have repeatedly highlighted the *relationship* between Brown, Docx and Plaintiffs' loan.  Plaintiffs have alleged that  Brown on behalf of Docx, LPS and LPS Default, (LPS) instructed individual involved in Plaintiffs' case to fraudulently fabricate the documents in a joint venture with DBNTC, One West, IMMS, MERS, and Merscorp et al through McCabe, its alter ego, Surety, Moynihan, O'Sullivan and Beiramee. *(See Dkt. 285 pg.5-8)*.

Brown, Docx, LPS, LPS Default affirmatively assisted, helped conceal or failed to act when required to do so, thereby enabling fraud to occur in Plaintiffs' case.  Being Chief Executive of Docx and

Vice President of LPS, Brown in the lease had constructive knowledge[3] of breach. See *Resource Finance & RFC I v. Cynergy Data*, No. 650142/2011, 2013 N.Y. Misc. LEXIS 5385 (N.Y. Co. Nov. 19, 2013). Plaintiffs have been compelled to incur time and expense in responding to very same allegations raised by Docx et al in a joint venture at least ***four*** times in this matter, moreover, Docx's motion for sanctions directly contravenes the position that the various courts nationwide have already ***expressly*** endorsed, by sending their chief executive Lorraine O'Reilly Brown[4] to jail for criminal acts of perjury and uttering. (*See Exhibit- 2 of Dkt. 285 and Plaintiff's request for judicial Notice*). See also *(See Dkt. 285 pg.5-8)*

Further, Docx, LPS, LPS Default with others have paid fines, signed ***consent*** orders with Department of Justice, various Attorney Generals, and courts. ***Docx***, a mortgage Document Creation[5] Company and subsidiary of LPS in Jacksonville, Florida, along with Ms. Brown were

---

[3] Docx, LPS, LPS Default were aware they were providing substantial assistance to DBNTC, One West, IMMS et al breach by helping them through creation of false ownership documents to steal Plaintiff's primary residence when they were not in default. Docx, LPS, LPS Default enacted a "clandestine scheme to oust Plaintiffs" from their home and knowingly participated in alleged breach help DBNTC, One West, IMMS acquire Plaintiff's property fraudulently, created false ownership documents which were used to cloud title to Plaintiff's property and "assisted in hiding, creating, forging, uttering, transferring and selling documents related to Plaintiff's property. Because evidence demonstrated Docx et al provided assistance through creation of false ownership documents, through McCabe and Beiramees' efforts to obtain ownership to Plaintiff's Primary Residence, the question whether that assistance was substantial would be ***determined*** by jury. Docx's actual knowledge of the fiduciary duties, the breaches thereof, and the breaches of court's and regulator's duties aiders should proceed to trial.

[4] According to plea documents, Brown implemented these signing practices at Docx to enable Docx and Brown to generate greater profit for LPS. Specifically, Docx was able to create, execute and file larger volumes of documents using these illegal signing and notarization practices. To further increase profits, Docx also hired temporary workers to act as authorized signers. These temporary employees worked for much lower costs and without quality control represented by Brown on behalf of Docx, LPS and LPS Default. Some of these temporary workers were able to sign thousands of mortgage-related instruments a day. ***Docx generated*** approximately ***$60 million*** in gross revenue for LPS. After these documents were ***falsely*** signed and ***fraudulently*** notarized, Brown authorized Docx employees to file and record them with local county records offices across the country, these documents were later relied upon in court proceedings in Plaintiff's case, including wrongful foreclosures and federal bankruptcy actions. Brown ***admitted*** she understood that property recorders, courts, title insurers and homeowners ***relied*** upon documents as genuine. Case investigated by FBI, with assistance from state of Florida's Department of Financial Services.

[5] See Docx Price list for creating/ drafting of missing documents ***FAC Exhibit-8, ¶¶ 52, 62***

indicted on February 6, 2012, by a grand jury in Boone County, Missouri. LPS agreed to pay

Missouri $2 million to resolve a case against its *Docx* over so-called *robo-signing* of mortgage-

related documents.[6]

LPS and Docx falsified documents related to home seizures, including through "robo-

signing." The Federal Reserve, FDIC and OCC have discussed directing at least some of the

money to homeowners. LPS settled Docx case with Colorado AG for $ 1.3 Million plus $

500,000 fees. LPS also settled with Delaware AG over *Docx* fraudulent documents for $ 1.5

Million plus $100,000 as fees[7]. LPS has paid over $160 million to state and federal authorities

related to the Docx's *conduct*.[8]  Docx told its signers to allow unauthorized and/or temporary

---

[6] Under agreement, LPS paid state of Missouri $2 million and will cooperate with A G's Office
in its continuing criminal investigation" of Brown. The cases are *State v. Docx LLC*, 12BA-
CROO433, and *State v. Brown*, 12BA-CR00430, Boone County, Missouri, Circuit Court
(Columbia). See *Dkt. 285 Exhibit-3 Brown* and *Docx* were each *charged* with 68 counts of
*forgery*, a class C *felony* in Missouri and 67 counts of False Declaration, a Class B
*misdemeanor*. "Mass-producing *fraudulent* signatures on millions of real estate documents
across America *constitutes* forgery."  In January 2013, LPS agreed to pay $127 million[6] in a
settlement with various states including Virginia. (*See Exhibit-4, 4A and 4B*)  Illinois AG Lisa
Madigan characterized LPS and Docx as a "*document factory*[6], literally *rubber-stamping*
thousands of foreclosures with no *regard* to fairness and accuracy." LPS, LPS Default and Docx
Consent Orders ; FRB No. 11-052-B-SC-1, FRB No. 11-052-B-SC-2, FRB No. 11-052-B-SC-3,
FDIC-11-204b, OCC AA-EC-11-46, OTS DC-11-039, *available at http://www.occ.gov/news-
issuances/news-releases/2011/nr-occ-2011 and* dated 2/6/2013,*Circuit Court Richmond
Virginia, Case No.*CL-13-509.(FAC 62, 63, 78, 99-113 fn.33, 44-5 pg.18, 24 and Exhibits-8,15).
The Justice Department in February 2013 announced a *separate* $35 million in criminal
penalties and forfeiture against Docx, LPS and LPS Default, saying in a news release that the
company participated in "a six-year scheme to prepare and file more than *1 million fraudulently*
signed and notarized mortgage documents." LPS was in talks with regulators that lead a
settlement of more than *$200 million* over *improper* and *fraudulent* foreclosure *paperwork*[6]
after the 2008 credit crisis.

[7] http://www.housingwire.com/articles/lps-settles-delaware-ag-over-docx
[8] LPS has committed crimes subsequent to this Agreement, or that LPS has given false,
incomplete, or misleading testimony or information at any time, or that LPS has otherwise
violated any provision of Agreement, LPS shall thereafter be subject to prosecution, including
perjury and obstruction of justice. Any such prosecution is not time-barred by applicable statute
of limitations, shall be tolled. LPS agrees to pay monetary penalty of $35,000,000. LPS will pay

employees to sign and notarize documents, making them appear to have been properly executed.
"These signing practices were used at Docx and were implemented to increase profits for LPS. In
light of *__confirmable__* facts stated in *FAC ¶¶144-5 fn.76 and Exhibit-16*, Plaintiff's FAC is *__well-
grounded__* in fact, indicates that Plaintiffs have adequately inquired into allegations, and thus,
should not have to defend against frivolous Rule 11 motion filed by Docx, to harass Plaintiffs.
(See Dkt 285 pg. 5-8)

     Docx, LPS and LPS Default in a joint venture violated RICO and the FAC does not lack any
evidentiary support. The opposition makes various false, misleading in their sanctions motions.
Moreover instead of limiting their sanctions motion to just that, the opposition asks for certain
relief within the subject motion that would normally be found in a motion to dismiss, and a
motion to strike. The *time* to file MTD and motion to strike has long been expired and thus court
should disregard any reference to striking paragraphs in FAC, that opposition improperly
referred in subject motion. The false and misleading statements made or implied within the
sanctions by the Docx et al. (See Dkt.285 pg.8-9).   Plaintiffs have alleged a joint venture
wherein Docx has a central role in initiating, organizing and orchestrating *fraudulent*
foreclosures including in Plaintiffs' case with all the various steps involved including organizing

---

$20 million to US Marshals Service, and $15 million to U S Treasury, both within ten days of
this Agreement, signed by Mr. Todd C. Johnson and Paul J McNulty for LPS on February 14,
2013. The Public statement by LPS, Docx et al's counsels contradicts in whole or in part the
statements contained in agreement, has committed crimes after signing Agreement, or that LPS
has given false, incomplete, or misleading testimony or information, or that otherwise violated
any provision of this Agreement: (a) all statements made by LPS or any of its employees, agents
to Government or law enforcement agents, and any testimony given by LPS or any of its
employees, agents before a grand jury or other tribunal, whether prior or subsequent to signing of
Agreement, and any leads derived from such statements or testimony, shall be admissible in
evidence in any criminal proceeding brought against LPS; and (b) LPS shall assert no claim
under U S Constitution, any statute, Rule 410 of Fed. Rules of Evidence or any other federal
rule that such statements or any leads derived therefrom are inadmissible or should be
suppressed. By signing this Agreement, LPS et al waives all rights in foregoing respects.

the various parties needed to accomplish the same.  Such involvement includes creating

fraudulent documents to even aiding in drafting of court filed pleading.  Moreover, as a general

rule, parties to a joint venture are *mutually* and *vicariously* liable for injuries or harms caused by

their venture.  See *Pritchett v. Kimberling Cove Company*, 568 F.2d 570 (8th Cir.1978), *Rowe v.

Brooks*, 329 F.2d 35 (4th Cir.1964); *Richardson v. Walsh Construction Company*, 334 F.2d 334

(3d Cir.1964); Opco, Inc. v. Scott, 321 F.2d 471 (10th Cir.1963). The *Rowe* court found a joint

venture where there was an (oral) agreement between parties, the planned venture was for mutual

advantage and profit, each party to the venture was to have a measure of control over and

responsibility for the enterprise, and harm was caused by activities within the scope of the

enterprise. *Rowe v Brooks* at 39

　　　As stated herein, Plaintiff's Pleadings against Docx are *not* Frivolous but rather are well-

grounded in fact after inquiry made into the alleged statements.   Moreover, Plaintiffs hereby

incorporate by reference their opposition to joint venture's MTD as stated in Dkt. 246,247,243,

244, 257, 231, 233,235, 239. See Plaintiffs' opposition Dkt.246 at pg.16-26. (See Dkt.285 pg.9)

Docx was receiving, "Active and rather Extensive assistance of underdisclosed counsel  Jonathan F.

Claussen not licensed to practice in Virginia, not associated with this case" was engaging in a

misrepresentation to the court. Upon information and belief, the pleading in this case were

drafted by Mr. Jonathan F. Claussen *not* licensed to practice law in Virginia. The extensive

undisclosed participation by Mr. Claussen is *improper* and falsely permits Docx to appear as if

being represented by Ms. Ernest and Mr. Tompkin.  Without entering an appearance in this case

Claussen circumvents[9] court rules requiring the assumption of responsibility for Docx's

---

[9] *Mr. Claassen's* actions in providing substantial legal assistance to Docx, Ms. Lisa and Mr. Tompkin
without entering an appearance in this case  inappropriately shields *Mr.Claussen* from responsibility and
accountability for his actions.

pleadings and inappropriately shields him from accountability in this matter. Such failure to

disclose by all Docx counsels involved is a violation of DR:7-102(A)(3), which requires that a

lawyer shall not conceal or knowingly fail to disclose that which he is required by law to

reveal.(See Dkt.285 pg.10)  Docx, LPS and LPS Default and their counsels Ms. Ernest engaged

in ***apparent ex parte***[10] *communications* with the Court regarding this case and admitted such

communication in a joint venture response. There appears to be *improper ex parte*

*communication* and Plaintiffs are unaware of the exact extent of such *ex parte communication, as*

*the Court order did not state the name of person involved in ex parte communication.* In this

case  *ex parte* communication would be a communication between Docx's attorney Ms. Ernest

***and*** Judge O'Grady's Law Clerk, when, Plaintiffs were not present. Plaintiffs are prejudiced

because they reasonably believe that Defendants have gained a ***procedural, substantive*** or

***tactical advantage*** as a result of the *ex parte* communication with the Court. No one from

opposing party ***or*** Court notified Plaintiffs of substance of such *ex parte* communication or

*allowed* them an opportunity to respond. Because Plaintiffs are *pro se*, this Court was obliged to

treat them as it would treat an attorney. Plaintiffs were not present during communications at

issue, and *ex parte* communication "has influenced court's action."  *See Strothers v.*

*Strothers, 30 Mass. App. Ct.* 188, 192 (1991). The instructions to Defendants by the Judge's Law

Clerk without Plaintiffs were an improper *ex parte* [11]  communication because it dealt with a

---

[10] *Ex-parte* is not limited to communication with only a Judge.  It extends to court clerks and all personnel
that can influence outcome of a case. Ex-parte Communication is defined as: "Black's Law Dictionary
296 (8th ed.2004);  Emergency circumstances may require *ex parte*, and some communications are
allowable so long as they do not provide a ***procedural, substantive****,* or *tactical advantage* to one party
over another. *Ex parte* communications are looked down upon as "contrary to the basic values of *fairness*
governing litigation under our adversary system." *Olsson v. Waite,* 373 Mass. 517, 531 (1977)
[11] After viewing the record of Defendants as a whole, ***prejudice*** resulted from *ex parte* communication.
Plaintiffs did not waive any objection and ***will*** file their motion to recuse the person from the Court, when
it becomes known who was involved in such *ex parte* communication which prejudiced the Plaintiffs. The
court official, the *Law Clerk* of the Judge Liam O'Grady who was involved in *ex parte* communication

substantive matter in case. *See Kathleen Kerr, Ex Parte Communications in Time of Terror*, 18 *Geo. J. Legal Ethics* 551, 553 (2005); *See also Haluck v. Ricoh Elec., Inc.*, 60 *Cal. Rptr.* 3d 542, 545 (Cal. Ct. App. 2007).   Therefore, actions of Ms. Ernest in calling Law clerk of the Judge Liam O' Grady clearly come under the definition of *ex-parte* communication. Ms. Ernest states that *her* reason to *contact* the Judge's clerk was to "inquire how to best address situation procedurally" as she was "*confronted* [12] with Plaintiffs' *express* [13] *refusal* [14]." *See pg. 2 opposition Dkt. 167& Dkt. 285 pg.11-14.*

Plaintiffs' FAC clearly has merit; moreover, Plaintiffs have painstakingly provided responses and proofs in their opposition to the various motions to dismiss filed in this matter. Plaintiffs have a good faith argument for why the defendant's behavior violates the law, and Plaintiffs will prove their case after discovery and will prevail on merits. Facts contained in FAC alleging conduct that can only be proven by discovery should not engender sanctions, as they have been properly pled. Plaintiffs undoubtedly have made extensive and a reasonable inquiry before in their stated allegations and have evidentiary support. The prefilling investigation conducted by the plaintiffs does not warrant sanctions. By signing a document presented to the

---

with Docx's counsel Ernest did *not* ensure that these communications do not unfairly advantage one party over another.  The prohibition of *ex-parte* communication applies to clients or other intermediaries acting at the suggestion or direction of a lawyer, Rule 8.4(a), and *to ex parte* contacts with not only judges but also "*hearing officers, court clerks exercising important discretionary functions,* and similar officers." Modern Ethics § 11.3 at 604 (footnotes omitted), Even a West Virginia judge was reprimanded for advising a state prosecutor how to conduct his closing argument. *In re Starcher*, 457 S.E.2d 147, 151 (W. Va. 1995).By submitting the *false* mutual convenient date without Plaintiff's consent, knowledge and permission, the attorney  Ernest has not merely *suggested* how the Judge should rule. Such contacts pose a *serious* dilemma for Plaintiffs who try to play by rules. The Restatement states quite explicitly that "[i]f a judicial officer initiates an impermissible *ex parte* communication with an advocate, the advocate must refuse to continue the communication."

[12] A False statement by an officer of the court
[13] Another False statement, Ms. *Ernest* never contacted Plaintiffs and there is no written or an oral conversation between her and Plaintiffs. Ms. *Ernest* admitted *ex parte* communication with Law clerk of Judge assigned to this case. *See Joint response pg. 2. Dkt. 167*
[14] Another False statement by officer of the court, Plaintiffs never refused.

Court, Docx and its counsels are representing that the document [complies with Rule 11]. Docx and its counsels are themselves liable for sanctions under Fed.R.Civ.P. 11(b) for filing frivolous motions which lacks any factual support

Docx's Motion is, from seasoned *professionals,* acting <u>unprofessionally</u> towards *Pro Se* litigants <u>*unfairly*</u> and <u>*unethically*</u> accused of acting unprofessionally. *Pro se* litigants are not attorneys[15], nor should the courts treat them as if they were. *Pro se* parties as non-lawyers generally do not possess the skill and legal acumen to distinguish complex legal concepts. The <u>*same*</u> conduct by a lawyer receiving a sanction should <u>*not*</u> warrant the imposition of sanctions <u>*upon*</u> a *pro se* litigant, if the reason that suit is frivolous requires significant understanding of legal concepts and effective legal research. *See Walker T. Martin, Inc. v. Peoples Gas and Light And Coke Co., slip op. No. 85-9728 (N.D. Ill 1986) (failure to state claim based on pro se party's ignorance of law. Therefore, sanctions were not imposed).*

Sanctions should not be assessed when legal issues invoked by *pro se* litigant are either complicated or unsettled. *See e.g., Pudlo, 587 F.Supp. at 1012 (complex/ unsettled area of legal procedure for challenging tax claim does not warrant sanctions against pro se litigant) (See Dkt 285 pg.20-24)*

### PRAYER FOR RELIEF

WHEREFORE for the reasons stated herein including not complying with the mandatory safe harbor rule, Plaintiffs respectfully requested that the Court reverse its decision on granting

---

[15] Implicit within the standards developed is the notion that all attorneys should be judged as if their resources and skills were roughly equal. However, some suggest that all attorneys should not be treated equally. Rather attorneys who are experts in a given area of the law should have a **_higher duty_** than general practitioners. *See Schwarzer; supra* note 4, at 194. This note rejects that approach and suggests that the court evaluate attorneys against the hypothetical average, "reasonable" attorney. Evaluating conduct based on what the individual attorney knew or should know smacks more of a subjective analysis of the attorney's capabilities and state of mind and runs counter to the objective nature of Rule 11.

sanctions against Plaintiffs, and sua sponte sanction Docx and its attorney for Rule 11 violations and that Plaintiffs be awarded costs and fees incurred in defending against repeated motions for sanctions, pursuant to Rule 11 (c) (l) (A)[1]. The *Coburn Optical Industries* court assessed sanctions for violating Rule 11 based on the filing of a frivolous Rule 11 motion. *See Coburn Optical Industries, Inc. v. Cilco, Inc.*, 610 FSupp. 656, 661 (M.D. N.C 1985); (Dkt. 285 pg 2-5)

Docx's Motion is, from seasoned *professionals,* acting unprofessionally towards *Pro Se* litigants *unfairly* and *unethically* accused of acting unprofessionally. *Pro se* litigants are not attorneys, nor should the courts treat them as if they were.

Moreover, the Court must cancel its directive to the Plaintiffs to provide an affidavit of financial condition currently due by Friday, May 27, 2016.

## CERTIFICATION

Pursuant to Local Civil Rule 83.1(M) (2), M. Nawaz Raja and Neelum Nawaz Raja, *Pro Se* Plaintiffs declare under penalty of perjury that no attorney has prepared, or assisted us in preparation of Plaintiff's Memorandum in support of their Motion for reconsideration.

Respectfully Submitted on May 20, 2016

M. Nawaz Raja                    Neelum Nawaz Raja
                                 42907 Park Brooke Court
                                 Broadlands Virginia 20148
                                 Phone: (540) 687-0004
                                 Email: therajafamily@gmail.com

## CERTIFICATE OF SERVICE

We hereby certify that on May 20, 2016, a true and correct copy of the foregoing pleading was filed with the United States District Court for The Eastern District of Virginia, Alexandria Division and mailed by First Class U.S. Mail, postage prepaid to the following on the address below;

Michael W. Tompkins Esq.
Lisa M. Ernest Esq.
Fidelity National Law Group
8100 Boone Boulevard, Suite 600
Vienna, VA22182

M. Nawaz Raja & Neelum Nawaz Raja